# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| MATTRESS WAREHOUSING, INC. and WILLIAM T. FURRY, <br><br> Plaintiffs, <br><br> vs. <br><br> POWER MARKETING DIRECT, INC. d/b/a PMD FURNITURE DIRECT, GJC ENTERPRISES, INC. and GREGORY J. CARRERA, <br><br> Defendants. | No. 08-CV-141-LRR <br><br> **ORDER** |

## I. INTRODUCTION

The matters before the court are Plaintiffs' Motion to Remand (docket no. 8) and Defendants' Motion to Strike Reply Brief (docket no. 11).

## II. PROCEDURAL BACKGROUND

### A. *Petition*

On October 1, 2008, Plaintiffs Mattress Warehousing, Inc. ("MWI") and William T. Furry ("Furry") filed a two-count Petition at Law ("Petition") (docket no. 1-2) against Defendants Power Marketing Direct, Inc. d/b/a PMD Furniture Direct ("PMD"), GJC Enterprises, Inc. ("GJC") and Gregory J. Carrera ("Carrera"), in the Iowa District Court in and for Linn County. In Count 1, MWI alleges "Interference with Contractual Relationships" against all Defendants. In Count 2, Furry alleges "Interference with Employment Contract" against all Defendants. Plaintiffs bring these two claims under the Iowa common law.

The Petition alleges the following facts: Gregory M. Carradus ("Carradus") and Furry own MWI. MWI sells mattresses in Cedar Rapids, Iowa, through classified ads in a local newspaper, *The Gazette*. The classified ads list MWI's phone number. When

potential customers call the number, a recorded voice asks them to visit MWI's "showroom." Petition at ¶ 5. The showroom is only open on Thursday evenings and Saturday mornings. Historically MWI bought its mattresses from Symbol Mattress ("Symbol"), a national mattress manufacturer. Not coincidentally, Furry was one of Symbol's sales representatives.

PMD is one of MWI's competitors in the Cedar Rapids mattress market. PMD uses a similar sales model as MWI, except MWI sells mattresses (1) by appointment only and (2) on a nationwide basis via "licensed dealers." *Id.* at ¶ 8. GJC is PMD's licensee in Cedar Rapids and has sold mattresses via the classified section of *The Gazette* since June of 2007. Carrera is GJC's "principal" and directs GJC's activities. *Id.*

PMD's business model involves a "bait-and-switch" tactic. *Id.* at ¶ 11. PMD advertises its mattresses at "extremely low prices, often below cost." *Id.* When customers arrive at PMD's showrooms, however, the licensee always pressures the customers to buy different, higher-priced mattresses. GJC employs the bait-and-switch tactic in Cedar Rapids at the direction of Carrera.

PMD is one of Symbol's largest and best customers. PMD is able to exert undue, anti-competitive influence over Symbol.

In mid-2007, Symbol representatives informed Furry and Carradus that PMD was pressuring Symbol to "take action" against MWI and Furry. *Id.* at ¶ 13. On August 7, 2007, Symbol told Carradus and Furry that MWI must stop running ads in *The Gazette* or Symbol would (1) fire Furry and (2) stop selling mattresses to MWI. Symbol issued this ultimatum at the request of PMD. GJC and Carrera "participated in the activities of PMD in forcing Symbol to make the ultimatum . . . ." *Id.* at ¶ 14.

MWI stopped advertising in *The Gazette*. This decision adversely affected MWI's business and caused a decline in its sales. Furry started looking for a new job. In April of 2008, Furry quit working for Symbol. Midwest Sleep Products hired Furry and

provided MWI with a new source of cheap mattresses. MWI resumed advertising in *The Gazette*.

As soon as MWI resumed advertising in *The Gazette*, Symbol notified MWI that Symbol would no longer sell mattresses to MWI. MWI now orders all its mattresses from Midwest Sleep Products. Midwest Sleep Products's mattresses are more expensive than Symbol's mattresses and MWI's bottom line has suffered.

### *B. Removal*

On November 14, 2008, Defendants[1] removed the Petition, pursuant to 28 U.S.C. §§ 1441 and 1446. Defendants invoked this court's diversity jurisdiction under 28 U.S.C. § 1332.

Defendants alleged the amount in controversy exceeds $75,000. Defendants argued that the real parties-in-interest to this action are diverse even though all parties listed in the Petition are not diverse. For purposes of diversity jurisdiction, MWI, Furry, GJC and Carrera are all citizens of Iowa. PMD is a citizen of Ohio. Defendants claimed Plaintiffs fraudulently joined GJC and Carrera, and thus the court should ignore their citizenship.

Defendants sketched their fraudulent-joinder argument in their Notice of Removal (docket no. 1-1). Defendants asserted "[P]laintiffs' claims against GJC and Carrera fail to state a claim because neither participated [in] nor had any influence on the allegations that PMD forced Symbol to make an ultimatum to Plaintiffs which form the sole basis of their causes of action." Notice of Removal at 4. In support of their assertion, Defendants attached an affidavit from Carrera to their Notice of Removal. In the affidavit, Carrera admits he called PMD to inquire about Plaintiffs' "rhetoric" in their classified ads and "a potential conflict of interest" on the part of Furry. Carrera's Affidavit (docket no. 1-3),

---

[1] PMD removed the case and represented to the court that GJC and Carrera also consented to removal. PMD's attorney also represents GJC and Carrera. For the sake of clarity, the court refers to "Defendants" instead of PMD throughout this order even though arguably only PMD has appeared in this court.

at ¶ 6. Carrera denies he ever "ask[ed], request[ed] or insinuated that [PMD] should take action on my behalf." *Id.* at 7. He then categorically denies the gravamen of the Petition as to Carrera and GJC: "At no time have I had any conversations with [Symbol] asking, requesting or insinuating they should take action against [MWI]." *Id.* at 8. "Neither myself, nor anyone from GJC, participated in the activities of PMD in forcing Symbol to make an ultimatum as alleged in Plaintiffs' Petition." *Id.* at 9.

### C. *Motion to Remand*

On December 12, 2008, Plaintiffs filed the Motion to Remand. Plaintiffs contend this court lacks subject-matter jurisdiction and ask the court to send this case back to the Iowa District Court in and for Linn County. Plaintiffs point out that the parties listed in the Petition are not diverse. Plaintiffs deny they fraudulently joined GJC and Carrera to avoid federal court.

Plaintiffs' argument proceeds on the assumption that the court must accept the allegations in the Petition as true. As a corollary, the court must disregard Carrera's self-serving affidavit, in which he simply denies the allegations in the Petition. Because it is undisputed that the allegations in the Petition state a claim against all Defendants, Plaintiffs conclude there is no fraudulent joinder of GJC and Carrera.

On December 23, 2008, Defendants filed a Resistance (docket no. 9) to the Motion to Remand. Defendants offer a much different view of the appropriate legal standard. Defendants state:

> [Plaintiffs] ask[] this Court to blindly accept the unsupported and unverified allegations in the Petition when faced with a sworn affidavit showing Mr. Carrera and GJC, the fraudulently joined defendants, played no roll [sic] in the allegations giving rise to this action. Even when viewed in the light most favorable to [P]laintiffs, neither the facts nor the law justify remand.

Resistance (docket no. 9), at 1. Defendants pointed out that Carrera's affidavit was the

4

only evidence in the record. Because Carrera's affidavit disproves the allegations in the Complaint, the court may not accept those allegations as true. Therefore, Defendants assert Plaintiffs' claims against GJC and Carrera lack a reasonable basis in fact and their joinder is clearly fraudulent.

On January 7, 2009, Plaintiffs filed a Reply (docket no. 10). The Reply does not contain any new argument or legal authority. Rather, the Reply consists of a series of documentary exhibits offered as evidence in support of the allegations in the Petition. For example, the Reply contains an affidavit signed by both Plaintiffs that substantiates the allegations in the Petition. Plaintiffs testify as to various facts that constitute circumstantial evidence that Carrera and GJC played a part in PMD's role in Symbol's decision to issue the ultimatum to Plaintiffs. These facts are: (1) GJC and Plaintiffs are ruthless competitors;[2] (2) GJC referred to MWI as a "failing mattress storefront" shortly before Symbol issued the ultimatum; (3) GJC placed signs at the entrance to the neighborhood in which Plaintiffs live; (4) the driver who delivered the last load of Symbol mattresses to MWI expressed concern that no one see him make the delivery; and (5) GJC ran an ad in *The Gazette* that plagiarized Plaintiffs' name. The attachments include various classified ads from *The Gazette*, a Craigslist ad, a photograph of a yard sign and a letter from an employee of *The Gazette* about Defendants' unethical business practices.

### D. Motion to Strike

On January 15, 2009, Defendants filed the Motion to Strike. Defendants ask the court to strike the Reply because it is untimely and otherwise fails to comply with the Local Rules. Further, Defendants argue Plaintiffs' joint affidavit is ambiguous and "fails to set forth any facts which show that either [Carrera] or [GJC] participated in the alleged

---

[2] Plaintiffs detail the "mattress wars" in Cedar Rapids and Defendants' unethical business practices. For example, Plaintiffs allege GJC is (1) copying its advertisements, (2) intentionally confusing customers and (3) wrongly "flagging" and thereby effecting removal of MWI's ads on Craigslist.

5

ultimatum which is the subject of this action." Motion to Strike (docket no. 11), at 3.

On January 22, 2009, Plaintiffs filed a Resistance to the Motion to Strike. Plaintiffs admitted the Reply was filed one day late. Plaintiffs ask the court to excuse their tardiness because certain staff members at Plaintiffs' law firm took vacation over the Christmas and New Year holidays.

### III. MOTION TO STRIKE

The court shall deny the Motion to Strike. Defendants are correct that Plaintiffs have not shown good cause for failing to file their Reply in a timely manner. *Cf. Cerwinske v. Cambrex Charles City, Inc.*, No. 06-CV-2023-LRR (N.D. Iowa Aug. 14, 2007) (denying motion to reconsider dismissal of lawsuit under Federal Rule of Civil Procedure 60(b), where counsel for plaintiff had blamed his failure to file timely brief on a sick legal assistant), *aff'd*, 2009 WL 2009 WL 331365 (8th Cir. Feb. 12, 2009) (per curiam). However, granting the motion to strike under the peculiar circumstances of this case would only waste time. The sole function of the Reply is to offer evidence to the court that shows the court does not have jurisdiction over this case. Were the court to strike the Reply, Plaintiffs could simply introduce the evidence at a hearing on the Motion to Remand or at some later time in the litigation. The court is obliged to assure itself of subject-matter jurisdiction; the issue of jurisdiction may be raised by the court or the parties at any time in the litigation. *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1156-57 (8th Cir. 2008). The court does not condone Plaintiffs' neglect but discerns no prejudice to PMD.

### IV. MOTION TO REMAND

#### A. Diversity Jurisdiction

"Federal courts are courts of limited jurisdiction[,]" and the threshold requirement in every federal case is jurisdiction. *Godfrey v. Pulitzer Publ'g Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998). "Congress has constantly authorized the federal courts to exercise

jurisdiction based on the diverse citizenship of parties." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). In relevant part, 28 U.S.C. § 1332 provides:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states . . . .

28 U.S.C. § 1332(a)(1). "Since *Strawbridge v. Curtiss*, [7 U.S. 267 (1906)], [the Supreme] Court has read the statutory formulation 'between . . . citizens of different States,' 28 U.S.C. § 1332(a)(1), to require complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 82 (2005). "There is no federal diversity jurisdiction if the plaintiff and any defendant are citizens of the same state." *Simpson v. Thomure*, 484 F.3d 1081, 1083 (8th Cir. 2007).

### B. Fraudulent Joinder

"Joinder designed solely to deprive federal courts of jurisdiction is fraudulent and will not prevent removal." *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983) (citing *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir. 1979)). That is, "the right of an out-of-state defendant to remove a diversity suit to federal court 'cannot be defeated by a fraudulent joinder of a resident defendant.'" *Simpson*, 484 F.3d at 1083 (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). "Fraudulent joinder exists if, on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant." *Anderson*, 724 F.2d at 84. "A joinder is fraudulent only 'when there exists no reasonable basis in fact and law supporting a claim against the resident defendants.'" *Wilkinson v. Shackelford*, 478 F.3d 957, 964 (8th Cir. 2007) (citation omitted).

"The relevant inquiry in analyzing fraudulent joinder . . . focuses only on whether a plaintiff 'might' have a 'colorable' claim under state law against a fellow resident, not on the artfulness of the pleadings." *Id*. "[P]laintiff's motive for suing the non-diverse

7

defendant is irrelevant." *Probus v. Charter Commc'ns, LLC*, 234 F. App'x 404, 406 (6th Cir. 2007); *see, e.g., Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 189 ("[I]n a removal proceeding the motive of a plaintiff in joining defendants is immaterial, provided there is in good faith a cause of action against those joined."); *Morris v. E.I. Du Pont De Nemours & Co.*, 68 F.2d 788, 793 (8th Cir. 1934) ("The motives of the plaintiff in making his claim of joint liability are not important, because the motives of a party in bringing a lawsuit do not deprive the courts of jurisdiction to try it.").

The removing party bears the burden to prove fraudulent joinder. *Altimore v. Mt. Mercy Coll.*, 420 F.3d 763, 768 (8th Cir. 2005); *Plymouth Consol. Gold-Min. Co. v. Amador & S. Canal Co.*, 118 U.S. 264, 270-71 (1886); *Polito v. Molasky*, 123 F.2d 258, 260 (8th Cir. 1941); *Leonard v. St. Joseph Lead Co.*, 75 F.2d 390, 395 (8th Cir. 1935). Further, the court must "resolve all doubts about federal jurisdiction in favor of remand." *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993) (per curiam).

> [I]n situations where the sufficiency of the complaint against the non-diverse defendant is questionable, "the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide."

*Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 811 (8th Cir. 2003) (quoting *Ia. Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)).

### C. Analysis

The parties agree that the amount in controversy, exclusive of interest and costs, exceeds $75,000. They also agree that the Petition on its face does not disclose complete diversity between Plaintiffs and Defendants. Nor do the parties dispute that there is a reasonable basis in law for the Petition; that is, Defendants apparently concede the Iowa common law provides causes of action for "Interference with Contractual Relationships" and "Interference with Employment Contract" if all the facts alleged in the Petition are true. The fighting issue is whether there is a reasonable basis in fact for Plaintiffs' claims

against GJC and Carrera.

The parties' arguments are not well-joined but expose an important ambiguity in the law of fraudulent joinder: namely, when a defendant asserts there is no reasonable basis in fact for the plaintiff's claims against a non-diverse defendant, may the defendant submit evidence to the court to prove the plaintiff's claims lack merit or must the court assume all of the facts in the plaintiff's complaint to be true?  In other words, may the court "pierce the pleadings" and receive evidence on the issue of fraudulent joinder or is the court confined to the "four corners" of the plaintiff's complaint?  Neither the Supreme Court nor the Eighth Circuit Court of Appeals has answered these questions.  *See, e.g., Filla*, 336 F.3d at 810 ("'Neither our circuit nor other circuits have been clear in deciding the fraudulent joinder standard.'" (quoting *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)); James M. Underwood, *From Proxy to Principle: Fraudulent Joinder Reconsidered*, 69 Albany L. Rev. 1013, 1071-76 (2006) (surveying the law of fraudulent joinder in the Eighth Circuit and concluding: 'No one standard is applied consistently; and the courts themselves sometimes articulate multiple standards within the same opinion.'" (Citation omitted.)); *id.* at 1044 ("[T]he Supreme Court has failed to offer much specificity to the lower federal courts . . . . Because of this, the lower courts have struggled . . . .").[3] Some courts treat fraudulent joinder similarly to summary judgment and allow a defendant to attempt to "pierce the pleadings" with evidence.  *Travis*, 326 F.3d at 646-51; *Crowe v. Coleman*, 113 F.3d 1536, 1538-39 (11th Cir. 1997); *Fed. Beef Processors, Inc. v. CBS Inc.*, 851 F. Supp. 1430, 1436 (D.S.D. 1994); *Council Tower Ass'n v. Axis Specialty Ins. Co.*, No. 4:08CV1605CDP, 2008 WL 5423442, *1 n.1 (E.D. Mo. Dec. 29, 2008).  Other courts treat fraudulent joinder as more akin to a motion to dismiss, generally confine

---

[3] The phrase "fraudulent joinder" has not appeared in a Supreme Court case since 1939.  Yet the issue reappears on a regular basis in the day-to-day practice of federal district courts.

themselves to the four corners of the plaintiff's complaint and assume all allegations in the complaint to be true. *See, e.g., Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206-07 (2d Cir. 2001); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424-25 (4th Cir. 1999); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-54 (3d Cir. 1992); *Wells' Dairy v. Am. Indus. Refrig., Inc.*, 157 F. Supp. 2d 1018, 1026-1041 (N.D. Iowa 2001); *Reed v. Wal-Mart Stores, Inc.*, 902 F. Supp. 185, 187-88 (E.D. Mo. 1995). Given the realities of litigation and the fact that orders remanding cases to state court are ordinarily unappealable, 28 U.S.C. § 1447(d), this division of authority seems likely to fester.

Fortunately, the court need not resolve this difficult issue today. Even if the court assumes Defendants are correct and sanctions their attempt to "pierce the pleadings" in this case, the court holds Defendants have not met their burden to prove fraudulent joinder. *Altimore*, 420 F.3d at 768. Defendants have only presented the court with Carrera's affidavit. Carrera's affidavit is largely conclusory and self-serving; it does little more than deny the allegations in the Petition. Were courts to find fraudulent joinder whenever presented with a defendant's self-serving affidavit, few cases would ever be remanded and federal jurisdiction would greatly expand. *Cf. Polito*, 123 F.2d at 261 ("'Merely to traverse the allegations upon which the liability of the resident defendant is rested, or to apply the epithet 'fraudulent' to the joinder, will not suffice . . . .").

In their Reply, Plaintiffs responded to Carrera's affidavit and produced their own self-serving affidavit to substantially support the allegations in the Complaint. Although not explicitly stated therein, the court may reasonably infer from Plaintiffs' affidavit that Symbol's ultimatum to Plaintiffs originated from GJC on the orders of Carrera. The evidence is circumstantial but nonetheless probative of the ultimate issues of fact.

Here the court is presented with a classic "battle of the affidavits." A genuine issue of material fact arises as to the truth of the pertinent allegations of the Petition. Mindful of the Eighth Circuit Court of Appeals's admonitions to "resolve all doubts about federal

jurisdiction in favor of remand," *Bus. Men's Assurance*, 992 F.2d at 183, and "leave the [doubtful] question for the state court[] to decide," *Filla*, 336 F.3d at 811, the court shall grant the Motion for Remand.

## V.  *DISPOSITION*

Defendants' Motion to Strike Reply Brief (docket no. 11) is **DENIED**.  Plaintiffs' Motion to Remand (docket no. 8) is **GRANTED**.  This case is remanded to the Iowa District Court in and for Linn County.  The Clerk of Court is directed to provide a certified copy of this Order to the Clerk of Court for the Iowa District Court in and for Linn County.

**IT IS SO ORDERED.**

**DATED** this 16th day of February, 2009.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA